**MBNA AMERICA BANK, N.A., Appellant,**

v.

**Kathleen A. HILL, Appellee.**

**Docket No. 04–2086–BK.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 8, 2005.

Decided: Jan. 25, 2006.

Philip D. Anker, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, for Appellant.

Gary Klein, Roddy Klein & Ryan, Boston, MA, for Appellee.

Before: McLAUGHLIN, HALL, and

GIBSON,* Circuit Judges.

GIBSON, Circuit Judge.

MBNA America Bank, N.A. ("MBNA") appeals the district court's judgment affirming the bankruptcy court's order denying MBNA's motion to stay or dismiss an adversary proceeding brought by Kathleen Hill under 11 U.S.C. § 362(h). Hill filed the adversary proceeding against MBNA on February 7, 2002, as a putative class action on behalf of herself and others similarly situated, alleging violations of section 362(h) of the Bankruptcy Code and unjust enrichment. MBNA moved to dismiss or stay the proceeding in favor of arbitration under the Federal Arbitration Act, claiming that an account agreement between MBNA and Hill mandated arbitration of the claims. We hold that the bankruptcy court did not have discretion to refuse to stay the proceeding pending arbitration, and we reverse the district court judgment.

On October 9, 2001, Hill filed a petition for relief under Chapter 7 of the Bankruptcy Code. In December 2001, the trustee appointed for Hill's bankruptcy estate filed a report concluding that "there is no property available for distribution from the estate over and above that exempted by law" and declaring that the estate had "been fully administered." The bankruptcy case was concluded in March 2003, when the bankruptcy court granted Hill a discharge.

Hill filed this adversary proceeding in February 2002, based on events that occurred shortly after she sought bankruptcy relief. Before filing for bankruptcy, Hill had authorized MBNA to withdraw monthly payments of $159.01 from her bank account to pay down the balance she owed MBNA on a consumer loan. MBNA made the first of these withdrawals days before Hill filed her bankruptcy petition. Hill included MBNA in the schedule of creditors she filed with the bankruptcy court, and the bankruptcy court mailed notices to all creditors on October 10, 2001. In addition, Hill's counsel sent MBNA notice of the bankruptcy filing on October 23, 2001. In spite of these notices, MBNA withdrew another $159.01 installment from Hill's bank account on November 5, 2001. Hill claimed that MBNA continued to attempt to collect monthly payments and argued that MBNA's actions constituted a willful violation of the automatic stay provision in section 362(a) of the Bankruptcy Code, and that MBNA was thereby unjustly enriched.

Hill styled her complaint as a class action, setting forth allegations specific to her situation and asserting that a class of persons exist who are similarly situated. She alleged common issues, including whether MBNA has engaged in conduct that violates automatic stays in bankruptcy, whether MBNA's conduct is willful, and whether MBNA should be required to make restitution. Hill requested class certification.

MBNA filed a motion seeking to stay or dismiss the adversary proceeding in favor of arbitration, based on an arbitration clause contained in an amendment to Hill's credit account agreement. Hill's original account agreement with MBNA included a provision that authorized MBNA to amend the agreement. In December 1999, MBNA amended the agreements of the class of account holders that included Hill, and notified all account holders of the amendment by mail. The amended agree-

* The Honorable John R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

ments contained a mandatory arbitration provision. Hill's notice was not returned as undeliverable, and she did not exercise her opt-out right as set forth in the amendment. The arbitration amendment became effective February 1, 2000, and it provides:

> Any claim or dispute ("claim") by either you or us against the other... arising from or relating in any way to this Account Agreement or... your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief)... shall be resolved by binding arbitration.

MBNA contends that this provision required the bankruptcy court to stay or dismiss Hill's claims pending arbitration.

In a thorough opinion and order, the bankruptcy court denied MBNA's motion, concluding that the bankruptcy court was the "most appropriate forum to adjudicate the matter." MBNA appealed the order to the district court. The district court affirmed in part and reversed in part, holding that the bankruptcy court did not abuse its discretion by refusing to dismiss or stay the adversary proceeding in favor of arbitration of the section 362 claim. The district court concluded that permitting arbitration of the alleged automatic stay violation would "seriously jeopardize the objectives of the Bankruptcy Code." The district court held that the bankruptcy court abused its discretion by denying arbitration of the unjust enrichment claim because it was "arbitrable and non-core." However, because Hill had stated that she would abandon the unjust enrichment claim if it were held to be arbitrable, the district court dismissed the claim, and Hill does not appeal that dismissal. MBNA appeals the district court's order denying arbitration of the alleged violation of the automatic stay.

## I.

Our jurisdiction to hear this appeal is authorized by the Federal Arbitration Act, which states, "An appeal may be taken from ... an order ... refusing a stay" in proceedings where an issue is referable to arbitration. 9 U.S.C. §§ 3, 16(a); *Aceros Prefabricados, S.A. v. TradeArbed, Inc.,* 282 F.3d 92, 97 (2d Cir.2002).

■■■ We review *de novo* a district court's order issued in an appeal from the bankruptcy court. *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.),* 896 F.2d 1384, 1388 (2d Cir.1990). The bankruptcy court's conclusions with respect to enforcement of the arbitration clause raise mixed questions of law and fact. We review the bankruptcy court's factual determinations for clear error and its legal conclusions *de novo. U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.),* 197 F.3d 631, 640–41 (2d Cir.1999). If the bankruptcy court "has properly considered the conflicting policies in accordance with law, we acknowledge its exercise of discretion and show due deference to its determination that arbitration will seriously jeopardize a particular core bankruptcy proceeding." *Id.* at 641.

## II.

■■ The Federal Arbitration Act establishes a "federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and mandates the enforcement of contractual arbitration provisions. The Act provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. A court has a duty to stay its proceedings if it is satisfied that the issue before it is arbitrable, and "[t]his duty ... is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

■] However, as the Supreme Court acknowledged in *McMahon,* "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Id.* The party opposing arbitration has the burden of showing that Congress intended to preclude arbitration of the statutory rights at issue. Congressional intent can be deduced from the statute's text or legislative history, or from "an inherent conflict between arbitration and the statute's underlying purposes." *Id.* at 227, 107 S.Ct. 2332.

Disputes that involve both the Bankruptcy Code and the Arbitration Act often present conflicts of "near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach toward dispute resolution." *In re U.S. Lines, Inc.,* 197 F.3d at 640 (quoting *Societe Nationale Algerienne Pour La Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp.,* 80 B.R. 606, 610 (D.Mass.1987)).

■ In resolving these conflicts, courts distinguish between claims over which bankruptcy judges have discretion to refuse arbitration and those that they must send directly to arbitration. Bankruptcy courts generally do not have discretion to refuse to compel arbitration of "non-core" bankruptcy matters, or matters that are simply "related to" bankruptcy cases. *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),*

226 F.3d 160, 166 (2d Cir.2000). As to these matters, the presumption in favor of arbitration usually trumps the lesser interest of bankruptcy courts in adjudicating non-core proceedings. *Id.; In re U.S. Lines, Inc.,* 197 F.3d at 640.

■] Bankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters, which implicate "more pressing bankruptcy concerns." *In re U.S. Lines, Inc.,* 197 F.3d at 640. However, even as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that "inherently conflict" with the Arbitration Act or that arbitration of the claim would "necessarily jeopardize" the objectives of the Bankruptcy Code. *Id.* This determination requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy. The objectives of the Bankruptcy Code relevant to this inquiry include "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.),* 118 F.3d 1056, 1069 (5th Cir.1997). If a severe conflict is found, then the court can properly conclude that, with respect to the particular Code provision involved, Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements.

■ In this case, Hill's claim under § 362(h) of the Bankruptcy Code is properly characterized as a "core" bankruptcy proceeding. Claims that clearly invoke substantive rights created by federal bank-

ruptcy law necessarily arise under Title 11 and are deemed core proceedings. *Banque Nationale de Paris v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70 (2d Cir.2002). So too are proceedings that, by their nature, could arise only in the context of a bankruptcy case. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96–97 (5th Cir.1987). Actions brought under 11 U.S.C. § 362(h) are therefore core proceedings because they derive directly from the Bankruptcy Code and can be brought only in the context of a bankruptcy case.

■ In addressing the question of whether Hill's core proceeding should be arbitrated, both the bankruptcy court and the district court provided thoughtful analysis and addressed the relevant competing interests. The bankruptcy court recognized that "Code § 362(h) presents a conundrum in the context of a conflict between the jurisdiction of bankruptcy courts and arbitral fora." The bankruptcy court concluded that its court was the most appropriate forum for Hill's claim because a section 362(h) cause of action is strictly a product of the Bankruptcy Code. It is derived from the rights of a debtor, and recovery under it inures to the debtor rather than to the bankruptcy estate. Moreover, at the time of the bankruptcy court's ruling, Hill's bankruptcy case was open and she continued to require the protection of the automatic stay. Finally, the bankruptcy court noted that automatic stay provisions are the equivalent of an injunctive order of the bankruptcy court.

The district court held that the bankruptcy court did not abuse its discretion by denying MBNA's motion. The district court recognized it as a close case, but ultimately was persuaded by the fact that a ruling on Hill's claim did not require the bankruptcy court to address the terms of the agreement between Hill and MBNA. Instead, the court would decide whether MBNA violated the automatic stay provision. The district court also emphasized that to allow arbitration to go forward would seriously jeopardize the objectives of the Code in light of the fact that the automatic stay serves the same function as an injunction.

Although we reach the same conclusion as the lower courts that Hill's § 362(h) claim is a core proceeding, we hold that arbitration of her claim would not seriously jeopardize the objectives of the Bankruptcy Code because: (1) Hill's estate has now been fully administered and her debts have been discharged, so she no longer requires protection of the automatic stay and resolution of the claim would have no effect on her bankruptcy estate; (2) as a purported class action, Hill's claims lack the direct connection to her own bankruptcy case that would weigh in favor of refusing to compel arbitration; and (3) a stay is not so closely related to an injunction that the bankruptcy court is uniquely able to interpret and enforce its provisions.

First, and most importantly, arbitration of Hill's § 362(h) claim would not jeopardize the important purposes that the automatic stay serves: providing debtors with a fresh start, protecting the assets of the estate, and allowing the bankruptcy court to centralize disputes concerning the estate. *See SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir.2000). District courts have often reversed bankruptcy decisions refusing to compel arbitration of core bankruptcy matters and granted motions to arbitrate core claims on the grounds that arbitration would not interfere with or affect the distribution of the estate. *See, e.g., Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108 (S.D.N.Y.2001); *Pardo v. Akai Elec. Co. Ltd. (In re Singer Co. N.V.)*, 2001 WL 984678 (S.D.N.Y. Aug.27, 2001); *Bigelow*

*v. Green Tree Fin. Servicing Corp.,* 2000 WL 33596476 (E.D.Cal. Nov.30, 2000).

Hill's bankruptcy case is now closed and she has been discharged. Resolution of Hill's claim against MBNA therefore cannot affect an ongoing reorganization, and arbitration would not conflict with the objectives of the automatic stay. MBNA has reimbursed Hill for the $159.01 payment it extracted from her bank account, and Hill no longer requires the protection of the stay to ensure her fresh start. Because this was a liquidating Chapter 7 case, there was no reorganization and Hill's bankruptcy estate included only property in which she had an interest as of the commencement of her bankruptcy case. 11 U.S.C. § 541(a)(1). Consequently, any damages that might be awarded on the § 362(h) claim would be Hill's personal property and would not be part of her bankruptcy estate.

These factors distinguish Hill's case from cases where appellate courts have held that bankruptcy courts had discretion to refuse to stay proceedings pending arbitration. In those cases, resolution of the arbitrable claims directly implicated matters central to the purposes and policies of the Bankruptcy Code. *See, e.g., In re U.S. Lines, Inc.,* 197 F.3d at 641 (core insurance claims were integral to bankruptcy court's ability to preserve and equitably distribute assets of the estate where debtor faced mass tort actions); *In re Gandy,* 299 F.3d 489, 495–99 (5th Cir.2002) (core claims represented almost entirety of the debtor's estate, the claims concerned the equitable distribution of the assets among creditors, and one of the remedies sought was not available in arbitration); *Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.),* 403 F.3d 164, 170 (4th Cir.2005) (bankruptcy court's conclusion that arbitration of the claims would "substantially interfere with [the debtor's]

efforts to reorganize" not clearly erroneous).

Second, the fact that Hill filed her § 362(h) claim as a putative class action further demonstrates that the claim is not integral to her individual bankruptcy proceeding. By tying her claim to a class of allegedly similarly situated individuals, many of whom are no longer in bankruptcy proceedings, she demonstrates the lack of close connection between the claim and her own underlying bankruptcy case.

Third, we are not persuaded that a stay, which arises by operation of statutory law and not by any affirmative order of the bankruptcy court, is so closely related to an injunction that the bankruptcy court is uniquely able to interpret and enforce its provisions. An arbitrator of a § 362(h) claim would be asked to interpret and enforce a statute, not an order of the bankruptcy court. Arbitration is presumptively an appropriate and competent forum for federal statutory claims. *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 233, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Congress has authorized the litigation of automatic stay claims in district courts as well as in the bankruptcy court presiding over the debtor's bankruptcy estate, so this is not a matter within the exclusive jurisdiction of the bankruptcy courts. 28 U.S.C. § 1334(b). While the automatic stay is surely an important provision of the Bankruptcy Code, there is no indication from the statute that any dispute relating to an automatic stay should categorically be exempt from resolution by arbitration.

Arbitration of Hill's automatic stay claim would not necessarily jeopardize or inherently conflict with the Bankruptcy Code. We hold that the bankruptcy court did not have discretion to deny the motion to stay or dismiss the proceeding in favor of arbitration. We reverse and remand, and di-

rect the district court to remand to the bankruptcy court with directions to grant MBNA's motion to stay the proceeding in favor of arbitration.