**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1439**

GOLDMAN SACHS BANK USA, d/b/a Marcus by Goldman Sachs,

Appellant,

v.

RHEA ANN BROWN; GREGORY KEVIN MAZE,

Appellees.

------------------------------------------------------

NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS; NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER,

Amici Supporting Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Robert S. Ballou, District Judge.  (7:24-cv-00490-RSB-CKM)

Argued:  January 29, 2026                     Decided:  March 18, 2026

Before NIEMEYER, KING, and HARRIS, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Harris joined.  Judge King wrote a dissenting opinion.

**ARGUED:**  Roman Martinez, LATHAM & WATKINS, LLP, Washington, D.C., for Appellant.  Theodore Ohmstede Bartholow III, KELLETT & BARTHOLOW, PLLC,

Dallas, Texas, for Appellees.  **ON BRIEF:**  Jeff G. Hammel, Christopher Harris, Jason Hegt, New York, New York, Uriel Hinberg, LATHAM & WATKINS LLP, Washington, D.C.; David G. Browne, SPIRO & BROWNE, PLC, Glen Allen, Virginia, for Appellant. Karen L. Kellett, KELLET & BARTHOLOW, PLLC, Dallas, Texas; Malissa L. Giles, Tracy A. Giles, GILES & LAMBERT PC, Roanoke, Virginia, for Appellees.  Edward C. Boltz, Allan L. Gropper, THE LAW OFFICES OF JOHN T. ORCUTT, P.C., Durham, North Carolina, for Amici Curiae.

————————————

NIEMEYER, Circuit Judge:

This appeal requires us to resolve the tension between (1) having an adversary proceeding in bankruptcy resolved by arbitration, as mandated by an applicable contract provision and the Federal Arbitration Act ("FAA"), and (2) having it resolved in bankruptcy, as constitutionally authorized and implemented by the Bankruptcy Code. In this case, the adversary proceeding is based on an alleged violation of the automatic stay imposed by § 362(a) of the Bankruptcy Code. *See* 11 U.S.C. § 362(a).

Two debtors in bankruptcy commenced this adversary proceeding in the bankruptcy court under § 362(k) against Goldman Sachs Bank USA, alleging that it continued to collect credit card debt after the debtors had filed for bankruptcy, in violation of the automatic stay imposed by § 362(a). Goldman Sachs, invoking the arbitration clause in the credit card agreements with the debtors, filed a motion in the bankruptcy court to compel arbitration of the debtors' claim and to stay the adversary proceeding. The bankruptcy court denied the motion, resolving the tension between arbitration under the FAA and an adversary proceeding in the bankruptcy court in favor of continuing the adversary proceeding in the bankruptcy court, and the district court affirmed this ruling on appeal.

While there are substantial arguments on both sides of the issue, in the circumstances of this case, we conclude that arbitration would interfere and conflict with the strong and established policies and purposes of the Bankruptcy Code and accordingly affirm.

3

I

Rhea Ann Brown filed a Chapter 13 proceeding in the bankruptcy court in June 2023, and she listed, among her debts, her credit card debt with Goldman Sachs.  Gregory Kevin Maze filed a Chapter 7 proceeding in the bankruptcy court in November 2023, and he too listed among his debts his credit card debt with Goldman Sachs.

Within days of these filings, the Bankruptcy Noticing Center electronically transmitted notice of the filings to Goldman Sachs, warning it of the automatic stay imposed by the Bankruptcy Code.  Nonetheless, Goldman Sachs continued efforts to collect the credit card debt from both Brown and Maze, repeatedly representing to them, "Your account may be reported as charged off to the credit reporting bureaus."  Brown contends that Goldman Sachs representatives continued to contact her by email, writings, and telephone calls for more than six months, even though she had informed Goldman Sachs representatives by email, telephone, and her legal counsel that its collection efforts violated the bankruptcy court's automatic stay.  Maze contends similarly that Goldman Sachs representatives continued to contact him by email and telephone for more than three months.  When, during a telephone conversation on February 15, 2024, he gave the Goldman Sachs representative his legal counsel's contact information, the representative replied that it "was not her job to call [his] bankruptcy counsel, but it was [his] job to pay his bills."

Because of these continuing efforts to collect on their credit card debts, Brown and Maze commenced an adversary proceeding against Goldman Sachs in the bankruptcy court, alleging that Goldman Sachs' efforts constituted willful violations of the automatic

stay, in violation of 11 U.S.C. § 362(a)(3) and (6). They also alleged that Goldman Sachs had similarly violated automatic stays in at least two other bankruptcy cases pending in the same bankruptcy court. They sought injunctive relief, compensatory damages, punitive damages, and attorneys fees pursuant to § 362(k) and § 105. They also purported to represent a class pursuant to Federal Rule of Bankruptcy Procedure 7023, consisting of "all individuals in the United States . . . who currently are in a consumer bankruptcy case or were formerly in a consumer bankruptcy case . . . from whom [Goldman Sachs] made a post-petition demand for pre-petition debt."

Goldman Sachs filed a motion in the bankruptcy court to compel arbitration of the plaintiffs' claims and to stay the adversary proceeding pending there. It relied on the arbitration clause in the debtors' credit card agreements, which provided:

> **ARBITRATION.** You or we may elect, without the other's consent, to resolve any Claim by individual binding arbitration unless the Claim has been filed in court and trial has begun or final judgment has been entered. Even if a Claim is litigated in court, you or we may elect arbitration of any Claim made by a new party or any Claim later asserted by a party in that or any related or unrelated lawsuit. You or we may also elect arbitration of a Claim that the parties initially opted to litigate in court if that Claim is later modified (including to be asserted on a class, representative or multi-party basis or to seek different or additional relief).
>
> Notwithstanding the foregoing, only a court and not an arbitrator may decide any dispute or controversy about the validity, enforceability, coverage or scope of this arbitration provision, all of which are for a court and not an arbitrator to decide. However, disputes or controversies about the validity or enforceability of this Agreement as a whole are for the arbitrator and not a court to decide.

The agreements also provided that "[c]laims may be submitted to arbitration on an individual basis only. Claims subject to this arbitration provision may not be joined or

5

consolidated in arbitration with any Claim of any other person or be arbitrated on a class basis." Finally, the agreements provided that the arbitrator "may award relief only in favor of [an] individual Claim [and] may not award relief for or against any other person, whether directly or indirectly."

The bankruptcy court denied Goldman Sachs' motion to compel arbitration and to stay the adversary proceeding before it. It reasoned that the adversary proceeding, "by its very nature," stems from the bankruptcy itself and is both statutorily and constitutionally core, such that it had discretion to deny the motion. Recognizing that the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws," the bankruptcy court held that sending the debtors' claims to arbitration would irreconcilably conflict with the purposes of the Bankruptcy Code. (Quoting *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988)). The court added that because "[l]arger systemic issues . . . [that] implicate the foundational purposes of the Bankruptcy Code" are at play, the "specialized experiences" of the bankruptcy courts are "particularly suited to address [the issues] in a global manner."

On appeal, the district court affirmed, holding that the bankruptcy court had not abused its discretion. The district court explained that "arbitrating Plaintiffs' claims would inherently conflict with the Bankruptcy Code's objectives, as it could undermine the Bankruptcy Court's authority (1) to enforce the automatic stay to protect debtors and creditors' rights and (2) to provide a single centralized forum for resolving disputes related to the Plaintiffs' bankruptcy proceedings."

6

From the district court's order dated March 17, 2025, Goldman Sachs filed this appeal.

II

Goldman Sachs contends that the plaintiffs agreed in their credit card agreements to arbitrate all claims and that their agreements must be enforced in compliance with the FAA's strong public policy favoring arbitration, even though their § 362(k) claim is a statutory claim. It argues that because the Bankruptcy Code "manifests [no] congressional intent to preclude arbitration" for a § 362(k) claim and arbitration would neither interfere with the bankruptcy proceedings nor "undermine the purposes of the Bankruptcy Code," the bankruptcy court was required to order arbitration. It points out that Maze's Chapter 7 proceeding was closed when the court ruled and that Brown's plan in her Chapter 13 proceeding had been approved and was successfully being implemented without consideration of her § 362(k) claim. Thus, it maintains that the district court erred in finding a conflict between arbitration and the adversary proceeding in bankruptcy and in giving precedence to adjudication of the adversary proceeding in the bankruptcy court.

The plaintiffs, on the other hand, contend that their § 362(k) claim is a "constitutionally and statutorily core" bankruptcy claim that Goldman Sachs seeks to have resolved with a "case-by-case arbitration." Ordering arbitration, they argue, would create an "irreconcilabl[e] conflict with the purposes of the automatic stay in § 362 of the Bankruptcy Code, as well as with the principal 'fresh start' purpose of the Bankruptcy Code." They maintain that it would also undermine the constitutional purpose that the

7

bankruptcy laws be uniformly enforced. Thus, they conclude that the bankruptcy court properly denied arbitration.

While the parties' arguments highlight a tension between ordering and denying arbitration, the parties do not dispute the validity of the arbitration clause in the plaintiffs' credit card agreements, and they agree that plaintiffs' § 362(k) claim is a constitutionally and statutorily core bankruptcy claim.[*]

Arbitration is a contractually grounded out-of-court procedure that can be more efficient in resolving a dispute than a court proceeding, which is draped with many more mandated and authorized procedures. While arbitration was earlier treated with hostility by the courts as an unwise bypass around the role of courts, Congress reversed that hostility as a matter of public policy with its enactment of the FAA. The Supreme Court has thus observed that the FAA establishes "a liberal federal policy *favoring* [the enforcement of] arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). And as a consequence, it has held that the FAA requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Moreover, the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 516–17 (2018). As the *McMahon* Court explained, the FAA "provides no

---

[*] We agree that the § 362(k) claim is constitutionally core because it "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process," *Stern v. Marshall*, 564 U.S. 462, 499 (2011), and that it is also statutorily core, *see* 28 U.S.C. § 157(b)(2).

basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." 482 U.S. at 226 (cleaned up).

While arbitration is thus favored as a matter of public policy, so too is the process and relief afforded by the Bankruptcy Code. Indeed, it is assured by the Constitution, *see* U.S. Const. art. I, § 8, cl. 4, and fully implemented by Congress with its enactment of the Bankruptcy Code, its creation of bankruptcy courts, and its provision for the appointment of bankruptcy judges. As the Supreme Court has observed, "Congress intended to grant *comprehensive* jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously *with all matters connected with the bankruptcy estate*." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (emphasis added) (cleaned up). Thus, we have observed:

> Congress intended that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in bankruptcy. The Code contemplates the broadest possible relief in the bankruptcy court. Also, that history tells us that *the automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws*. It provides a breathing spell to the debtor to restructure his affairs, which could hardly be done with hundreds or thousands of creditors persevering in different courts all over the country for a first share of a debtor's assets. Absent a stay of litigation against the debtor, dismemberment rather than reorganization would, in many or even most cases, be the inevitable result.

*Grady v. A.H. Robins Co.*, 839 F.2d 198, 202 (4th Cir. 1988) (emphasis added); *see also* H.R. Rep. No. 95-595, at 174 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6135; S. Rep. No. 95-989, at 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840–41. The Bankruptcy Code implements the foundational purposes of bankruptcy, which include (1) giving the "honest but unfortunate debtor" a "fresh start," *Marrama v. Citizens Bank of*

9

*Mass.*, 549 U.S. 365, 367 (2007) (cleaned up); (2) providing "[c]entralization of disputes concerning a debtor's legal obligations" to be able to preserve assets and provide a fair allocation of the debtor's obligations, *Phillips v. Congelton, L.L.C.* (*In re White Mountain Mining Co.*), 403 F.3d 164, 170 (4th Cir. 2005); *Grady*, 839 F.2d at 202; and (3) applying the bankruptcy law uniformly, U.S. Const. art. I, § 8, cl. 4; *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 376 n.13 (2006). And at the center of a bankruptcy court's facility is the automatic stay imposed by § 362(a).

The parties' competing claims in this case create a tension between the pursuit of these two well established and important public policies. And our steps for resolving it must begin with Goldman Sachs' motion to mandate arbitration.

While the FAA does indeed mandate that arbitration agreements be rigorously enforced, its mandate, "[l]ike any statutory directive, . . . may be overridden by a contrary congressional command." *McMahon*, 482 U.S. at 226. And the party seeking to demonstrate that command has the burden of showing that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id*. at 227. As the *McMahon* Court explained, that intent "will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." *Id*. (cleaned up); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (noting that the exception to arbitration must turn on "whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue"); *Dean Witter*, 470 U.S. at 221 (noting that courts are to follow the requirement of rigorous

10

enforcement of arbitration agreements, "at least absent a countervailing policy manifested in another federal statute").

Thus, to resolve the tension presented here, we begin by applying the test set forth in *McMahon*. Under *McMahon*, courts must enforce the arbitration of statutory claims unless the statute *precludes* waiver of judicial remedies, as evidenced by (1) its text, (2) its legislative history, or (3) an "inherent conflict between arbitration and the statute's underlying purposes." 482 U.S. at 227. And they must apply this test as a matter of law. If a court concludes, after applying *McMahon*, that arbitration is not mandated, it may then exercise discretion in resolving the conflict between the forums. *Moses v. CashCall, Inc.*, 781 F.3d 63, 71 (4th Cir. 2015) (noting that "the court of first impression has discretion to decide whether to withhold arbitration").

In this case, the parties make no argument that the text of the Bankruptcy Code precludes arbitration. Rather, they focus on whether there is an "inherent conflict" between arbitration and the Bankruptcy Code's "underlying purposes." *McMahon*, 482 U.S. at 227. Thus, to this we now turn.

First, we note that unlike actions that are independently grounded in tort, contract, or a statute other than the Bankruptcy Code and are therefore unlinked to a bankruptcy court's function and purpose, a § 362(k) claim arises from a violation of the bankruptcy court's stay, which falls within the authority of the bankruptcy court under the Bankruptcy Code's statutory framework. The bankruptcy stay, which a § 362(k) claim vindicates, is foundational to the successful function of the bankruptcy purpose to collect all assets and debts of the debtor and harmonize their disposition. *See Robbins v. Robbins* (*In re*

11

*Robbins*), 964 F.2d 342, 345 (4th Cir. 1992); *Grady*, 839 F.2d at 202.  Thus, a § 362(k) claim is "as core" as any claim that arises from bankruptcy proceedings.

While the categorization of a claim as "core" may not automatically render the claim non-arbitral, the categorization does present a high bar to deny the bankruptcy court's discretion.  As the Fifth Circuit has explained, "There can be little dispute that where a core proceeding involves adjudication of federal bankruptcy rights wholly divorced from inherited contractual claims, the importance of the federal bankruptcy forum provided by the Code is *at its zenith*."  *Ins. Co. of N. Am. v. NGC Settlement Trust of Asbestos Claims Mgmt. Corp.* (*In re National Gypsum Co.*), 118 F.3d 1056, 1068 (5th Cir. 1997) (emphasis added).  And as one bankruptcy court put it, "Stated simply, the more 'core' the proceeding, the more likely a conflict exists."  *Huffman v. Legal Helpers Debt Resol., L.L.C.* (*In re Huffman*), 486 B.R. 343, 357 (Bankr. S.D. Miss. 2013).

A claim for violation of the stay is so critical because the automatic stay is the mechanism that enables the bankruptcy court "to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations."  *In re Robbins*, 964 F.2d at 345.  It thus supports "a principal purpose of the Bankruptcy Code . . . to centralize disputes over the debtor's assets and obligations in one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting judgments."  *CashCall*, 781 F.3d at 72.  Moreover, it does not merely serve the "[e]ase and centrality of administration" of the bankruptcy, *French v. Liebmann (In re French)*, 440 F.3d 145, 155 (4th Cir. 2006) (Wilkinson, J., concurring), but, by applying to all parties to a bankruptcy — that is, debtor and creditors alike — the stay provides a

12

fundamental bulwark against the collective action problems that a debtor's financial distress invites. *See* S. Rep. No. 95-989, at 49, *reprinted in* 1978 U.S.C.C.A.N. at 5835 ("Without [the automatic stay] . . . [t]hose who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally").

Granting Goldman Sachs' motion to arbitrate the plaintiffs' § 362(k) claim — a claim that has no independent grounding outside of the Bankruptcy Code — would thus undermine the needed centralization of claims and effectively allow Goldman Sachs, after allegedly violating the stay, to assert the primacy of a private contractual right over the collective interests of all other creditors. This would, we conclude, fundamentally interfere with a core purpose of the Bankruptcy Code. *In re White Mountain Mining Co.*, 403 F.3d at 169 (holding that the "centralized decision-making" so crucial to a bankruptcy court's ability to balance these competing interests is inconsistent with arbitration "because permitting an arbitrator to decide a core [bankruptcy] issue would make debtor-creditor rights contingent upon an arbitrator's ruling rather than the ruling of the bankruptcy judge assigned to hear the debtor's case" (cleaned up)); *see also* Anthony J. Casey & Joshua C. Macey, *The Bankruptcy Tribunal*, 96 Am. Bankr. L.J. 749, 751 (Winter 2022) ("Any two parties could use a private arbitration provision to remove from the bankruptcy tribunal a dispute that affects the rights of other parties . . . [which] would be the equivalent of allowing those two parties to force all other claimants to waive their right to have their claims collectively resolved in the bankruptcy tribunal").

13

To be sure, we recognize that the plaintiffs' claim under § 362(k) is not directly implicated in harmonizing the interests of the debtors and their creditors, but it does enforce the bankruptcy court's ability to do so. The stay is an ongoing status that is monitored and enforced by the bankruptcy court such that the court can, as necessary, enjoin violations under 11 U.S.C. § 105 (authorizing the court to issue injunctions). This could not be done in a private arbitral forum.

Beyond this degradation of a fundamental purpose of bankruptcy, arbitration of the plaintiffs' § 362(k) claim would, we conclude, also undermine the "shield" created by the automatic stay — a shield afforded to the debtor against the "financial pressure during the pendency of the bankruptcy proceeding." *Winters ex rel. McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996). Such a shield bolsters the "principal purpose of the Bankruptcy Code" of granting "a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama*, 549 U.S. at 367 (quoting *Grogan v. Garner,* 498 U.S. 279, 286, 287 (1991)). Thus, as we have observed, the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws, giving the debtor a *breathing spell* from his creditors." *Wood v. U.S. Dep't of Hous. & Urban Dev.* (*In re Wood*), 993 F.3d 245 (4th Cir. 2021) (emphasis added) (cleaned up). Arbitration beyond the walls of the bankruptcy court would diminish, if not eliminate, this breathing spell that the Code intended be enforced. Moreover, this diminishment could be multiplied for every claim made.

There are other underlying purposes that would also be diminished by arbitration. A fundamental purpose of the Bankruptcy Code is to assure that bankruptcy laws be uniform and be uniformly enforced. Not only is this expressly grounded in the text of the

14

Constitution, which authorizes Congress "to establish . . . *uniform* Laws on the subject of Bankruptcies *throughout the United States*," U.S. Const. art. I, § 8, cl. 4 (emphasis added), but it also represents the earliest understandings of the Constitution. As Justice Joseph Story remarked in the early years of the Republic, federal jurisdiction over bankruptcy matters "result[s] from the importance of preserving harmony, promoting justice, and *securing equality of rights and remedies among the citizens of all the states*." 3 Joseph Story, *Commentaries on the Constitution* § 1102 (1st ed. 1833) (emphasis added); *see also The Federalist No. 42*, at 221 (James Madison) (George W. Carey & James McClellan eds., 1990) ("The power of establishing uniform laws of bankruptcy, is so intimately connected with the regulation of commerce, and will prevent so many frauds where the parties or their property may lie or be removed into different States, that the expediency of it seems not likely to be drawn into question"). And the Supreme Court has readily acknowledged this, stating, "Congress has the power to enact bankruptcy laws the purpose and effect of which are *to ensure uniformity* in treatment of state and private creditors." *Katz*, 546 U.S. at 377 n.13 (emphasis added). Yet arbitration would clearly undermine this purpose. Arbitration *individualizes* the disposition of claims such that one arbitrator's judgment might differ from another's or from a court's. And there is no ability to assure their uniformity through appeal to the courts and ultimately the Supreme Court. As is well understood, "judicial review of an arbitration award is severely circumscribed, and is among the narrowest known at law." *Friedler v. Stifel, Nicolaus, & Co.*, 108 F.4th 241, 246 (4th Cir. 2024) (cleaned up).

15

For yet another compromised purpose, arbitration would also bypass the expertise of bankruptcy judges in favor of private arbitrators, who may not even be lawyers and who normally would not be versed in the complexities of the Bankruptcy Code. In that vein, Congress created bankruptcy courts to implement the Bankruptcy Code and bring to the court's jurisdiction all property of a debtor, wherever located, as well as the claims of all creditors, to enable the court to harmonize the interests of both the debtors and the creditors. And Congress provided for the appointment of bankruptcy judges for terms of 14 years *specifically and exclusively* to preside over bankruptcy matters, *see* 28 U.S.C. §§ 151, 152, 157, surely in recognition that bankruptcy is a discrete and comprehensive process deserving dedicated and experienced judges. As Congress recognized when enacting the Bankruptcy Code, "[i]n bankruptcy, *specialization is necessary* to the functioning of the system." H.R. Rep. No. 95-595, at 19, *reprinted in* 1978 U.S.C.C.A.N. at 5980 (emphasis added). And the courts have routinely recognized this. *See Robbins*, 964 F.2d at 345 (recognizing that "*the expertise* of the bankruptcy court" is a factor to consider when reviewing the court's discretion (emphasis added)); *Ackerman v. Eber* (*In re Eber*), 687 F.3d 1123, 1131 (9th Cir. 2012) (recognizing that bankruptcy courts have "*special expertise* to decide" core matters (emphasis added)); *Holland v. Zimmerman* (*In re Zimmerman*), 341 B.R. 77, 80 (Bankr. N.D. Ga. 2006) (recognizing the debtor's interest in having dischargability and related issues "determined in one forum with *particularized expertise* to do so" (emphasis added)); *Huffman*, 486 B.R. at 364 (recognizing that a bankruptcy court can consider its own "*specialized expertise*" in exercising discretion to deny motion to compel arbitration of adversary proceeding (emphasis added)); *Merrill v.*

16

*MBNA Am. Bank, N.A.* (*In re Merrill*), 343 B.R. 1, 9 n.10 (Bankr. D. Me. 2006) (recognizing that "applying and enforcing the stay (and related provisions) is [not] a simple exercise where a bankruptcy judge's *experience and training* are not required" (emphasis added)).  Mandating arbitration of adversary proceedings grounded in the Bankruptcy Code would deny the parties the bankruptcy judges' expertise and thus frustrate this underlying purpose of the Bankruptcy Code.

And specifically with respect to § 362(k) claims, arbitration would constrict the remedies that Congress authorized in the Bankruptcy Code.  Section 362(k) authorizes not only an award of compensatory damages for a violation of § 362(a), but also, when the violation is willful, an award of punitive damages.  *See* 11 U.S.C. § 362(k).  Punitive damages, of course, impose punishment on the violator, but they also provide deterrence to discourage future violations.  It has been observed, correctly, that the "primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior." *In re Shade*, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001). This deterrence of punitive damages is a prophylactic purpose, and such purpose therefore "cannot function in the dark." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571 (1980).  Yet, relegating awards of punitive damages to the *private forum* of arbitration sends deterrence into "the dark" and therefore cannot serve the purpose underlying the Bankruptcy Code's authorization of punitive damages for § 362(a) violations.

Under the *McMahon* test, the determination of whether the Bankruptcy Code precludes waiver of judicial remedies so as to preclude arbitration may also be informed by the Code's "legislative history," *McMahon*, 482 U.S. at 227, and the legislative history,

17

we conclude, also supports our conclusion in this case. In describing the adequate protection of property provided under the Bankruptcy Code, the Senate Report accompanying the Bankruptcy Reform Act of 1978 explained that the automatic stay provides creditor protection, and the scope of the stay is "broad." S. Rep. No. 95-989, at 50, *reprinted in* 1978 U.S.C.C.A.N. at 5836. More relevantly, the Report explains that under the automatic stay, "[a]ll proceedings are stayed, including *arbitration*, administrative, and judicial proceedings." *Id.* (emphasis added).

Thus, there are in this case several inherent conflicts between arbitration and adjudication of the § 362(k) claim in bankruptcy — the degradation of the bankruptcy court's core purpose of conducting comprehensive bankruptcy proceedings, the lack of centrality for dispositions, the erosion of the bankruptcy shield, the lack of uniformity, the lack of bankruptcy expertise, and the deterrent purposes of punitive damages — that, together with the legislative history, amply demonstrate that arbitration here would conflict with the underlying purposes of the Bankruptcy Code. They also amply support the district court's discretion in retaining the plaintiffs' adversary proceeding in the bankruptcy court.

Goldman Sachs nonetheless argues that arbitration of the plaintiffs' § 362(k) claim would have no impact on the administration and settlement of Maze's estate, since his Chapter 7 bankruptcy is closed, and that it would have only an ancillary effect on Brown's ongoing Chapter 13 bankruptcy, since her securing a damages award would only increase the value of her estate and the assets available to creditors. In making this argument, it relies largely on *CashCall*, where we affirmed the preclusion of arbitration for a claim seeking a declaratory judgment about a loan's illegality but allowed arbitration of a state

18

law damages claim. 781 F.3d at 66 (per curiam). As to the state law damages claim, we explained that retaining it in bankruptcy was not required because "enlargement of the underlying estate due to any damages received . . . [would be] simply too attenuated" from the bankruptcy. *Id*. at 82 (Gregory, J., concurring in the judgment); *see id*. at 93 (Davis, J., concurring in the judgment). Goldman Sachs would have us treat the plaintiffs' claim here as we treated the state law damages claim in *CashCall*. But the circumstances are materially distinct. Crucially, in *CashCall*, we held only that the plaintiff's *non-core* claim for damages *under state law* could be arbitrated, *id*. at 66 (per curiam), reasoning that "the success or failure of *the non-core claim* may have ancillary effects on [the debtor's] bankruptcy" but that such effects were "too attenuated, and indeed extrinsic to the bankruptcy, to constitute an 'inherent conflict' with the Bankruptcy Code's purpose of facilitating an efficient reorganization." *Id*. at 82 (Gregory, J., concurring in the judgment); *see id*. at 93 (Davis, J., concurring in the judgment). The same, however, cannot be said here where Brown's claim is statutorily and constitutionally core. And far from being "extrinsic to the bankruptcy," like a debtor's state law claim in *CashCall*, Brown's claim here is based entirely — from stem to stern — on the Bankruptcy Code and the bankruptcy court's continuing jurisdiction over her estate.

Goldman Sachs also relies on the Second Circuit's holding in *MBNA American Bank, N.A. v. Hill*, 436 F.3d 104 (2d Cir. 2006), to support its position. In *Hill*, the court held that the bankruptcy court, in the peculiar circumstances presented there, did not have discretion to deny a motion for arbitration of a claim that the creditor had violated the automatic stay. *Id*. at 110–11. There, the debtor had already received her discharge, and

19

her Chapter 7 bankruptcy case had been closed. *Id.* at 110. Thus, the court reasoned that resolution of the debtor's claim "[could not] affect an ongoing reorganization, and arbitration would not conflict with the objectives of the automatic stay." *Id*. Moreover, the court distinguished its holding *on that basis* from cases where other appellate courts, including the Fourth Circuit, had held "that bankruptcy courts had discretion to refuse to stay proceedings pending arbitration." *Id.* (citing *In re White Mountain Mining Co.,* 403 F.3d at 170). Thus, *Hill*'s holding is inapposite, and we cannot determine whether the *Hill* court would have ruled the same way had it been faced with an arbitration issue in an ongoing bankruptcy proceeding, as we are here.

Finally, Goldman Sachs argues that our conclusion runs contrary to the recent trend in which the Supreme Court has consistently declined to hold that federal statutory claims are unsuited for arbitration. Indeed, the Court has observed, "[i]n many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the Arbitration Act and other federal statutes," referring to "statutes ranging from the Sherman and Clayton Acts to the Age Discrimination in Employment Act, the Credit Repair Organizations Act, the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influence and Corrupt Organizations Act." *Epic Sys. Corp.*, 584 U.S. at 516.

Despite the Court's reference to those statutes, however, the Bankruptcy Code presents a unique statutory context, especially where, as here, the claim is both statutorily *and* constitutionally grounded. *See, e.g., CashCall*, 781 F.3d at 72 (recognizing that bankruptcy "represents a fundamental public policy . . . [g]rounded in the Constitution"); *see also Roth v. Butler Univ. (In re Roth)*, 594 B.R. 672, 674–76 (Bankr. S.D. Ind. 2018)

20

(distinguishing compelled arbitration in the bankruptcy context from the Supreme Court's general support for arbitration of other statutory claims, recognizing the constitutional basis of the Code and noting that the "very purpose of the Bankruptcy Code is to modify the rights — contractual and otherwise — of debtors and creditors").  And the Supreme Court has not addressed whether arbitration of bankruptcy claims is in conflict with the Bankruptcy Code, although it has twice in recent years denied petitions for certiorari of circuit court decisions that found no abuse of discretion where bankruptcy courts denied motions to compel arbitration of claims stemming from the Bankruptcy Code.  *See Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 382, 391–92 (2d Cir. 2018) (concluding that the bankruptcy court did not abuse its discretion in retaining claim that credit card issuer had violated bankruptcy court's discharge injunction), *cert. denied*, 586 U.S. 823 (2018) (No. 17-1652); *Belton v. GE Cap. Retail Bank* (*In re Belton*), 961 F.3d 612, 616–18 (2d Cir. 2020) (similar), *cert. denied*, 141 S. Ct. 1513 (2021) (No. 20-481). Scholars too have recognized bankruptcy's unique position as a counterpoint to the Supreme Court's trend in favor of arbitration for statutory claims, referring to it as, for example, "bankruptcy's arbitration countercurrent."  Kara J. Bruce, *Bankruptcy's Arbitration Countercurrent and the Future of the Debtor Class*, 96 Am. Bankr. L.J. 819, 820 (Winter 2022) ("Despite the steady stream of Supreme Court decisions favoring arbitration in other contexts, bankruptcy courts have consistently refused to enforce pre-dispute arbitration clauses").

21

In short, although the Supreme Court has sided with arbitration in the context of many statutory frameworks, it has not done so in a bankruptcy context, and bankruptcy is unique, as we explain, raising important distinguishing factors.

*      *      *

For the reasons given, we therefore affirm the order of the district court dated March 17, 2025, denying Goldman Sachs' motion to compel arbitration.

AFFIRMED

KING, Circuit Judge, dissenting:

With great respect, I am constrained to dissent from the panel majority's erroneous affirmance of the ruling of the Western District of Virginia, which refused to compel arbitration of the putative class claims asserted by plaintiffs Rhea Brown and Gregory Maze (collectively "plaintiffs") against defendant Goldman Sachs. Parting ways with my good friends, I am of opinion that the outcome here is readily compelled by the Supreme Court's precedent of *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), and our Court's 2015 decision in *Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015). Put simply, the plaintiffs' claims — by which they seek to hold Goldman Sachs liable for allegedly violating the Bankruptcy Code's automatic stay provision, *see* 11 U.S.C. § 362 — belong in arbitration, not an adversary proceeding before the bankruptcy court.

In these circumstances, arbitrating the plaintiffs' § 362 automatic bankruptcy stay claims — which, as the majority has recognized, are indubitably subject to the binding arbitration agreements between the plaintiffs and Goldman Sachs, *see ante* at 8 (recognizing that "the parties do not dispute the validity of the arbitration clause in the plaintiffs' credit card agreements") — does not create an "inherent [i.e., 'irreconcilable'] "conflict" with the Bankruptcy Code, as my friends say that it does. *See McMahon*, 482 U.S. at 226; *CashCall*, 781 F.3d at 71. In fact, there is no conflict at all in arbitrating the plaintiffs' § 362 automatic bankruptcy stay claims because the success (or failure) thereof would neither add nor subtract a new creditor to these bankruptcies, nor would it serve to

23

"frustrate creditor distribution." *See CashCall*, 781 F.3d at 93 (Davis, J., concurring).[1] On

that basis, I would send the plaintiffs' § 362 automatic stay claims to arbitration, despite

the majority's unpersuasive musings about why an "inherent conflict" exists here.

Furthermore, in addition to flouting the *McMahon* and *CashCall* precedents, the

panel majority has needlessly created a circuit split with the Second Circuit — that is, the

only other court of appeals to address whether a § 362 automatic stay claim belongs in

arbitration. *See MBNA America Bank, N.A. v. Hill*, 436 F.3d 104 (2d Cir. 2006).[2] Contrary

to the majority's take, the Second Circuit correctly ruled in *Hill* that arbitrating a § 362

automatic bankruptcy stay claim does "not interfere with or affect the distribution of the

estate," since the debtor there had obtained a discharge of her debts and there was no

"ongoing reorganization" left with respect to the bankruptcy. *Id.* at 108-10. Otherwise,

the Second Circuit cogently and rather persuasively explained that resolution of a debtor's

---

[1] To be sure, Ms. Brown's Chapter 13 bankruptcy was confirmed by the bankruptcy court in September 2023. And Mr. Maze received a discharge in his Chapter 7 bankruptcy in February 2024. It thus strains credulity for the plaintiffs to maintain — and for the panel majority to now accept — that the plaintiffs are being deprived of the "fresh start" available to debtors by way of the Bankruptcy Code. *See ante* at 7. And in Ms. Brown's case, it fully undermines the majority's assertion that arbitrating her § 362 automatic bankruptcy stay claim would "substantially interfere with . . . efforts to reorganize." *See Phillips v. Congelton, L.L.C.* (*In re White Mountain Mining Co.*), 403 F.3d 164, 170 (4th Cir. 2005).

[2] The panel majority waxes poetic that the Second Circuit's *Hill* decision was resolved in "peculiar circumstances," and therefore its reasoning is limited. *See ante* at 19. But I do not read *Hill* in the same manner as my friends in the majority — the Second Circuit was clear in ruling that arbitration of the *Hill* debtor's § 362 automatic bankruptcy stay claim was warranted because it was neither "integral to [the] bankruptcy court's ability to preserve and equitably distribute assets of the estate," nor "directly implicated matters central to the purposes and policies of the Bankruptcy Code." *See* 436 F.3d at 110.

24

§ 362 automatic bankruptcy stay claim is not "integral to [the] bankruptcy court's ability to preserve and equitably distribute assets of the estate," and does not "directly implicate[] matters central to the purposes and policies of the Bankruptcy Code." *Id.* at 110.[3]

\* \* \*

Pursuant to the foregoing — and consistent with *McMahon*, *CashCall*, and the Second Circuit's *Hill* decision — I would reverse and remand for entry of a court order compelling arbitration of the plaintiffs' § 362 automatic bankruptcy stay claims against Goldman Sachs. Because the majority has ruled otherwise, I respectfully dissent.

---

[3] The Second Circuit further recognized that sending the *Hill* debtor's § 362 automatic bankruptcy stay claim to arbitration was appropriate given "the fact that [she] filed her § 362[] claim as a putative class action." *See* 436 F.3d at 110. That rather notable fact, the court of appeals explained, highlighted a glaring lack of connection between the debtor's § 362 claim and her bankruptcy estate: "By tying her claim to a class of allegedly similarly situated individuals, many of whom [were] no longer in bankruptcy proceedings, [the debtor] demonstrates the *lack of close connection* between the claim and her own underlying bankruptcy case." *Id.* (emphasis added). And the very same can be said here of the plaintiffs' putative class claims asserted against Goldman Sachs — i.e., they also lack a "close connection" with the plaintiffs' respective bankruptcy estates. *Id.*